IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM DAVID HARRISON,

    Petitioner,

v.                               Civil Action No. 3:17CV738

HAROLD W. CLARKE, DIRECTOR OF THE
VIRGINIA DEPT. OF CORRECTIONS,

    Respondent.

### MEMORANDUM OPINION

William David Harrison, a Virginia inmate proceeding by counsel, brings this AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS ("§ 2254 Petition," ECF No. 15). Respondent moves to dismiss, inter alia, on the ground that the one-year statute of limitations governing federal habeas petitions bars the § 2254 Petition. Harrison has filed a RULE 5 REPLY TO RESPONDENT'S MOTION TO DISMISS ("Reply," ECF No. 22.) For the reasons set forth below, the Motion to Dismiss (ECF No. 18) will be granted.

### I.   PROCEDURAL HISTORY

#### A.   State Proceedings

On November 3, 2008, Harrison was convicted in the Circuit Court of Isle of Wight County ("Circuit Court") of object sexual penetration, rape, and abduction with the intent to defile. (ECF No. 20-1, at 1; ECF No. 20-2, at 1.) On March 4, 2009, the

Circuit Court sentenced Harrison to a total active term of incarceration of life plus forty-five years. (ECF No. 20-1, at 2.) Harrison appealed. The Court of Appeals of Virginia summarized the evidence of Harrison's guilt as follows:

> On the night of June 15, 2007, the victim, a nine-year-old girl, was visiting the home of a family friend with her seven-year-old sister and three of her brothers. Also present were Michael Baker ("Baker") and Harrison, whom the victim knew as "Monte." At approximately 11:30 p.m., Baker, who the victim referred to as her stepfather, told the victim and her sister that it was time for them to go home. The two girls then left to walk home.
>
> In order to walk home, the girls had to take a path through a partially wooded area. As the girls walked along the path, the victim turned around and noticed Harrison following approximately seven to eight feet behind them. When the victim looked back again shortly thereafter, she saw that Harrison was no longer behind them. Moments later, Harrison "jumped out of the woods" and told the victim's sister to "go home before he bust [sic] her upside her head." The victim's sister ran home.
>
> Once alone with the victim, Harrison pushed her down, grabbed her wrists, and dragged her to an area behind a shed. When the victim screamed, Harrison punched her in the eye, telling her that if she screamed again, he would take her into the woods. Harrison took off the victim's shirt and shorts and then instructed her to remove her underwear. Harrison pulled down his pants and told the victim to lie down. Harrison then "got on top of" the victim and inserted his penis into her vagina.
>
> Harrison then moved the victim to another location, behind a neighbor's house, where he forced the victim to place her shirt inside her mouth while he inserted his fingers into her vagina. He also put his penis inside her mouth.
>
> At some point, the victim was able to escape from Harrison and ran naked with her shorts in her hand to her neighborhood, where she encountered several of her cousins and older brothers. The victim tearfully reported to them that "Monte rape[d]" her. Several

witnesses saw the victim running naked that night, and several more witnesses heard the victim crying and saying that Harrison raped her.

The victim was taken to the hospital, where Sherlene Pregent ("Pregent"), a sexual assault nurse examiner, examined her. Pregent noticed that the victim had a swollen eye, scratches on her left inner thigh, and leaves and debris in her hair. Around the victim's external genital area, Pregent observed "a lot of swelling," blood clots, bruising, and several tears, including one she characterized as a "significant tear" that the medical team had considered suturing. In Pregent's opinion, the victim's injuries resulted from "very aggressive, forceful" penetration.

The next day, Deputy Sheriff James Pope of the Isle of Wight Sheriff's Office took the victim back to her neighborhood to retrace the path through the woods and the field where the attack occurred. As a result, Deputy Pope was able to recover the victim's shoes and underwear, a screwdriver, and a ball cap. The victim identified the ball cap as the one worn by Harrison when he attacked her. Forensic examination of the ball cap revealed blood stains from the victim on the inside of it.

Harrison was subsequently arrested and charged with object sexual penetration, rape, and abduction with intent to defile.

. . . .

In addition to the testimony of the victim and Pregent, the jury also heard testimony from the victim's sister. The victim's sister testified that Harrison followed them out of the friend's house, told her to go home, and threatened to "bust [her] in the back of [her] head" if she did not leave.

Additionally, the jury heard testimony from Earl Goodman ("Goodman"), an inmate housed with Harrison in jail after his arrest. According to Goodman, Harrison said that he was "drinking" and "high" when he accosted a "little girl that he knew" while they were "outside." In describing the crime to Goodman, Harrison said that one little girl ran away and he dragged the other and tried to "get his way with her." Harrison told Goodman that he removed the girl's clothes and "started messing with her." Goodman testified that Harrison had said he "couldn't do what

he wanted to do because the little girl was fighting back."
. . . .
Harrison then presented witnesses on his behalf, including his daughter, his mother, and his estranged wife, in an attempt to establish that Harrison was elsewhere at the time of the attack. Harrison was subsequently found guilty on all counts and sentenced to life in prison plus eighty-five years.

(ECF No. 20-2, at 1-5 (alterations in original).)

On June 22, 2010, the Court of Appeals of Virginia affirmed Harrison's convictions. (Id. at 9.) On November 15, 2010, the Supreme Court of Virginia refused Harrison's petition for appeal. (ECF No. 20-3, at 1.)

On November 14, 2011, Harrison filed filed a petition for a writ of habeas corpus in the Circuit Court. (See ECF No. 20-4, at 2.) On July 9, 2012, the Circuit Court denied the petition. (Id. at 16.) Harrison filed no appeal of that decision.

On June 19, 2017, Harrison filed an original petition for a writ of habeas corpus in the Supreme Court of Virginia. (See ECF No. 20-5, at 1.) The Supreme Court of Virginia dismissed the petition, finding that it "was not filed within one year from the November 15, 2010, final disposition of petitioner's direct appeal. Code § 8.01-654(A)(2)." (Id.)

B. Federal Habeas Petition

On October 19, 2017, Harrison executed and placed his original pro se § 2254 petition in the prison mail system for

transmission to this Court.[1]  (ECF No. 1, at 15)[2]  The Court
finds that the § 2254 Petition filed as of October 19, 2017, not
September 19, 2017.  See Houston v. Lack, 487 U.S. 266, 276
(1988).  Harrison later retained counsel, and filed the § 2254
Petition that is before the Court.  (ECF No. 15.)[3]  Harrison
contends that he is entitled to habeas relief based on the
following:

> A. Trial counsel, Randolph D. Stowe, failed to
> investigate and question the victim ("W.B."), a nine-
> year-old girl, on whether she ever told her five-year-
> old friend [(S.H.)], to say that Mr. Harrison touched
> her [(S.H.'s)] butt.  To the extent that W.B. would

---

[1] The Court employs the pagination assigned by the CM/ECF
docketing system for citations to the § 2254 Petition and the
Reply.

[2] Harrison indicates that he placed his original pro se
§ 2254 petition in the prison mail system on "(10-19-17)
September 19-17."  (ECF No. 1, at 15.)  The postmark on the
envelope in which Harrison's pro se § 2254 petition was mailed
notes a date of October 25, 2017.  (ECF No. 1-2, at 1.)  The
Court received the pro se § 2254 petition on November 1, 2017.
(ECF No. 1, at 2.)  The sum of this information shows that
Harrison placed this petition in the prison mail system on
October 19, 2017, not September 19, 2017.  Nevertheless, even if
the Court were to assume that the § 2254 Petition was filed on
September 19, 2017, it would still be untimely.

[3] Counsel originally filed a Motion to Amend (ECF No. 8) and
an Amended § 2254 Petition with the minor victim's name and
other minor witnesses' names un-redacted.  By Memorandum Order
entered on December 12, 2017, the Court denied the Motion to
Amend and instructed counsel that he could re-file a redacted
version of the Amended § 2254 Petition.  (ECF No. 12.)  The
Court notes that counsel failed to redact all of the names of
the minor witnesses.  The Court replaces those witnesses' names
with their initials in this opinion.

have denied saying that, S.H's mother and S.H. herself could have been called as a rebuttal witnesses.

B. Trial counsel . . . failed to investigate and question the victim and her younger sister on whether they ever falsely accused Mr. Harrison of pushing them down about two months before the sexual assault. To the extent that they would have denied saying that, Yvonne Hurdle could have been called as a rebuttal witness.

C. Trial counsel . . . failed to investigate the knowledge of Margaret Young about her sister's credibility and failed to call Margaret Young to testify that the victim, her younger sister, and Mr. Harrison were not at her home the night of June 15, 2007 when the victim was sexually assaulted.

(§ 2254 Pet. 13.)

## II. ANALYSIS

### A. Statute Of Limitations

Respondent contends that the federal statute of limitations bars Harrison's claims. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

      (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

      (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

      (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

   2.   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

**B.   Commencement And Running Of The Statute Of Limitations**

Harrison's judgment became final on Monday, February 14, 2011, when the time to file a petition for a writ of certiorari to the Supreme Court of the United States expired. See Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); Sup. Ct. R. 13(1) (requiring that a petition for certiorari be

filed within ninety days of entry of judgment by state court of last resort or of the order denying discretionary review).

The statute of limitations began to run the following day, February 15, 2011. Two hundred and seventy-two days of the limitation period had expired before Harrison filed his petition for a writ of habeas corpus in the Circuit Court on November 14, 2011. See 28 U.S.C. § 2244(d)(2); (ECF No. 20-4, at 2). The statute of limitations began to run again on July 10, 2012, the day after the Circuit Court dismissed Harrison's petition for a writ of habeas corpus. The federal statute of limitation expired ninety-three days later, on Thursday, October 11, 2012. Harrison did not file his § 2254 Petition until October 19, 2017, more than five years after the expiration of the limitations period. Therefore, the statute of limitation bars Harrison's § 2254 Petition.[4]

## C. Belated Commencement Under 28 U.S.C. § 2244(d)(1)(D)

Harrison argues that he "does not claim timeliness under 28 U.S.C. § 2244(d)(1)(A) nor does he claim statutory tolling. Rather, [Harrison] claims timeliness under 28 U.S.C. § 2244(d)(1)(D) based on the factual predicate of his claims not

---

[4] Respondent notes that Harrison filed a second state habeas corpus petition in the Supreme Court of Virginia on June 19, 2017. However, that petition was also filed well beyond the expiration of the federal limitation period and is not entitled to statutory tolling. Indeed, Harrison concedes that he is not arguing that this second state habeas petition is entitled to statutory tolling.

previously being discoverable by due diligence." (Reply 2, ECF No. 22).

Whether a petitioner has exercised due diligence to warrant a belated commencement of the limitation period pursuant to 28 U.S.C. § 2244(d)(1)(D) is a fact-specific inquiry unique to each case. See Wims v. United States, 225 F.3d 186, 190-91 (2d Cir. 2000). A petitioner bears the burden to prove the exercise of due diligence. DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006). Due diligence "at least require[s] that a prisoner make reasonable efforts to discover the facts supporting his claims." Anjulo-Lopez v. United States, 541 F.3d 814, 818 (8th Cir. 2008) (quoting Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002)). A habeas applicant who "merely alleges that [he or she] did not actually know the facts underlying his or her claim does not" thereby demonstrate due diligence. In re Boshears, 110 F.3d 1538, 1540 (11th Cir. 1997). Under § 2244(d)(1)(D), the limitation period begins to run when the petitioner knows, or through due diligence could have discovered, the factual predicate for a potential claim, not when he recognizes its legal significance. See Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000). Furthermore, in evaluating a petitioner's diligence, the Court is mindful that the "statute's clear policy calls for

promptness." _Johnson v. United States_, 544 U.S. 295, 311 (2005).

Harrison argues that:[5]

> The factual predicates of [his] claims are the previously unavailable evidence (i.e., witness affidavits) appended to the habeas corpus petition in support. Mr. Harrison's claims concern the failure of his trial counsel to investigate and question the victim regarding whether she ever told her friend to say Harrison touched her buttocks [Claim A] and whether she and her sister ever falsely accused Harrison of pushing them down two months prior [Claim B]; and trial counsel's failure to investigate and call Margaret Young to impeach the victim's testimony that the victim, her sister, and Harrison were at Ms. Young's home the night of the attack [Claim C].
>
> Without the previously unavailable affidavits, Mr. Harrison was unable to establish the factual basis for his claims during the running of the original limitations period under § 2244. . . .
>
> The affidavits were previously unavailable through Mr. Harrison's due diligence. Mr. Harrison learned of what these witnesses might say from the report generated by trial counsel's investigator prior to trial. However, over Mr. Harrison's objections, trial counsel refused to follow up on the investigative results and use the information at trial as alleged in the present claims. . . .

---

[5] Harrison's § 2254 Petition, although notarized, is not truly sworn to under penalty of perjury, because he only states that "[t]he facts stated therein are true to the best of my information and belief and I intend them to have the same force and effect as an affidavit." (ECF No. 15-1, at 2.) Facts that are made upon belief or information are not sufficiently based on personal knowledge and fail to transform the statements in his § 2254 Petition into an affidavit. _See_ Rules Governing § 2254 Cases in U.S. District Courts, Rule 2(c)(5) (requiring that petitions brought pursuant to 28 U.S.C. § 2254 "be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242").

However, Mr. Harrison---sitting in prison since the day of his arrest and proceeding pro-se during the entirety of the state habeas proceeding---did not have the means or opportunity to track down these witnesses himself and demand statements and/or affidavits to support his claims. Therefore, Mr. Harrison resorted to the only reasonable thing he could do under the circumstances: conduct his own research to the best of his ability, attempt to contact the affiants on his own, and impress upon his family members the need to obtain sworn affidavits from the witnesses who spoke with trial counsel's investigator consistent with what they told him.

(§ 2254 Pet. 9-10.) Harrison then vaguely suggests that he "only recently received" these affidavits. (Id. at 10.) Harrison then clarifies that his efforts to obtain affidavits "started to yield results, beginning on December 30, 2016, the first witness, Yvonne Hurdle, agreed to come forward and supply Mr. Harrison with an affidavit. That was followed by the affidavits of Virginia Hall and her daughter [S.H.] on January 9, 2017; Margaret Young's on January 11, 2017. . . ." (Id. at 11.)[6]

---

[6] Harrison also submitted the affidavit of Carole Lyttle with his § 2254 Petition, however, neither Carole Lyttle nor her testimony is a basis for any of the three specific claims of ineffective assistance of counsel raised here. (§ 2254 Pet. 13.) Clearly, counsel would not have known about this testimony at the time of Harrison's trial. As Respondent correctly argues, this affidavit could only support a claim of actual innocence, an argument that Harrison specifically states he does not advance in his § 2254 Petition. (See Br. Supp. Mot. Dismiss 19 n.7, ECF No. 20; Reply 4-5, ECF No. 22.)

Moreover, as a preliminary matter, although the three affidavits submitted with his § 2254 Petition are notarized, none of them are truly sworn to under penalty of perjury. Rather, each affidavit repeats, "I swear under penalty of

Harrison, in essence, argues that the factual predicates underlying his ineffective assistance claims could not have been discovered by due diligence until Harrison obtained the affidavits. As discussed below, that is not correct, and, contrary to Harrison's contentions, he lacks entitlement to the benefit of a belated commencement of the limitations period.

### 1.    Claims A and B

As a preliminary matter, it is appropriate to note that Harrison's position on timeliness is logically inconsistent with his underlying claims that fault counsel for failing to call witnesses during trial. The factual predicate of a claim is the underlying "vital facts." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012) (citation omitted) ("The 'due diligence' clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal

_____

perjury that the foregoing is true and correct to the best of my knowledge and belief." (See ECF Nos. 15-1, at 5, 6, 7, 8.) Later, each affidavit states, "The facts stated in the Affidavit are true to the best of his/her information and belief." (See ECF No. 15-1, at 5, 6, 7, 8.) The Court is doubtful that such a statement transforms the contents of these affidavits into admissible evidence because statements made on "information and belief" fail to show that the affiant is competent to testify on the matters stated therein. See Hogge v. Stephens, No. 3:09CV582, 2011 WL 2161100, at *2–3 n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief, as "mere pleading allegations" (quoting Walker v. Tyler Cty. Comm'n, 11 F. App'x 270, 274 (4th Cir. 2001))). However, the Court need not decide the admissibility of these affidavits because the underlying claims that they support are untimely.

significance is actually discovered.")  The vital facts here in Claims A and B are that counsel failed to call as witnesses at trial, Virginia Hall and her daughter, and Yvonne Hurdle, who would have testified about previously lying by the victim.  Both Harrison and counsel were aware of exactly what Virginia Hall and her daughter and Yvonne Hurdle would have testified to before the trial.  Harrison admits that he learned the factual content of their testimony before his trial when defense counsel shared the report of the defense investigator with Harrison.  (§ 2254 Pet. 9.)

Claim A concerns the statements of Virginia Hall and her daughter, S.H.  Both Virginia Hall and S.H. indicated that the victim instructed S.H. to falsely accuse Harrison of touching her.  On July 1, 2008, Virginia Hall called the investigator and told him that the victim had told her daughter to lie about Harrison improperly touching her, and that Harrison had never touched her.  (ECF No. 15-1, at 13-14.)  The affidavits submitted by S.H. and Virginia Hall consist of the exact information provided to the defense investigator on July 1, 2008.  (Id. at 5-6.)  Thus, Harrison knew what Virginia Hall and her daughter would have testified to before Harrison's trial in November of 2008.  The fact that counsel did not call these two witnesses was readily known to Harrison by the conclusion of his trial.  Moreover, Harrison clearly had a copy of the

investigator's report in 2011 because he filed the report with his state habeas petition in the Circuit Court on November 14, 2011.

Harrison's timeliness argument with respect to Claim B suffers from similar deficiencies. Claim B concerns the statement of Yvonne Hurdle, indicating that the victim and her sister once falsely claimed that Harrison had pushed them to the ground. On June 30, 2008, Yvonne Hurdle spoke with the investigator and told him that, after Harrison was arrested, "she went to the police station and relayed to them that approximately 2 months beforehand," the victim and her sister had made up a story that Harrison pushed them down after Harrison told them to go home because it was late. (ECF No. 15-1, at 12-13.) Hurdle also told the investigator that one of the girls threw a rock at Harrison's face and she saw the mark left by the impact. Hurdle's affidavit contains the same facts as were in the investigator's report. (Id. at 8.) Again, both counsel and Harrison knew what Yvonne Hurdle would have testified to before Harrison's trial in 2008. Harrison was aware that counsel had not called Hurdle as witness by the end of his trial. Thus, Harrison was aware of the factual predicate underlying this claim as early as 2008, and at the very latest, by 2011 when he filed the investigative report with his state habeas petition and raised a claim faulting counsel for failing

14

to call Yvonne Hurdle.

For both Claim A and B, the limitation period began to run when Harrison knew of the factual predicate for each claim, not when he recognized its legal significance. Schlueter, 384 F.3d at 74; Owens, 235 F.3d at 359. In the absence of a showing that he was unaware of the factual predicate for each of these claims, Harrison's general and vague argument that he needed the affidavits in hand to actually know the facts underlying his claim, does not provide any refuge from the statute of limitations. See Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998) ("Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim.") Rather, the statute of limitations began running when Harrison "became aware of the facts giving rise to his claim, not when he obtained the evidence to support it." Deloney v. McCann, 229 F. App'x 419, 422 (7th Cir. 2007) (citations omitted). Harrison knew what these witnesses would testify to before trial, and he knew that his counsel had not called these witnesses immediately after the trial concluded. Because Harrison was aware of the factual predicates of his claims in 2008, or at the very latest in 2011, Harrison cannot rely on § 2244(d)(1)(D) to render Claims A or B timely filed.

Even though Harrison clearly actually knew of the factual predicates of his claims much earlier, Harrison makes much of the fact that he submitted the investigator's report to the Circuit Court with his state habeas petition, but that the Circuit Court found this report to be inadmissible and speculative, thus Harrison had no "evidentiary facts upon which to base his claims." (§ 2254 Pet. 11.) This means that Harrison was aware that he needed to obtain evidence in the form of affidavits or sworn statements to support his claims as early as the July 9, 2012 denial of his state habeas petition. Harrison failed to obtain any affidavits until December 2016 and January 2017. Harrison claims, vaguely, that he tried to get family members to obtain affidavits from these witnesses because he was incarcerated. However, Harrison fails to identify any specific efforts he made between July 2012 and December 2016 when he received the first affidavit. The record shows that Harrison simply fails to show that he was reasonably diligent in obtaining these affidavits.[7]

---

[7] Although Harrison does not argue that he is entitled to equitable tolling, the foregoing analysis also establishes that for the same reason, he would not satisfy that standard. Harrison fails to establish that he pursued his rights diligently or that an extraordinary circumstance stood in his way and prevented him from timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010).

Harrison then argues that, "[t]o the extent that Respondent challenges the veracity of Petitioner's explanation [for why it took him so long to obtain the affidavits], an evidentiary hearing is required for the taking of evidence and determining of facts." (Reply 3.) Harrison appears to misunderstand his burden under § 2244(d)(1)(D). Harrison bears the burden of demonstrating that he exercised due diligence. DiCenzi, 452 F.3d at 471. He has not done so here.

Accordingly, for Claims A and B, Harrison lacks entitlement to a belated commencement of the limitations period under § 2244(d)(1)(D). Claims A and B are untimely and are barred by the statute of limitations

### 2.   Claim C

Claim C asserts that trial counsel was deficient for failing to investigate Margaret Young's knowledge of her younger sister's credibility and for failing to call as a trial witness, Margaret Young, who would have testified that the victim, her younger sister, and Harrison were not at her home the night of the sexual assault, rape, and abduction. (§ 2254 Pet. 7, 9.) Once again, Harrison argues that he only obtained the affidavit from Margaret Young in January 2017, and the "affidavits were previously unavailable through Mr. Harrison's due diligence." (Id. at 9, 11.) In her affidavit, Margaret Young states in sum, "[o]n June 15, 2007, the night that W.B. was sexually assaulted,

W.B. and her sister C.B. were not at my house playing with my grandchildren. Also, 'Monty' William Harrison was not in my house on that night either." (ECF No. 15-1, at 7 (paragraph numbers omitted).)

To obtain a belated commencement of the limitation period, Harrison "must explain why a reasonable investigation would not have unearthed the facts prior to the date under which the limitation period commenced under 28 U.S.C. § 2244(d)(1)(A)." Magano v. Mims, No. 3:10CV525, 2011 WL 4073260, at *8 (E.D. Va. Sept. 13, 2011) (quoting In re Boshears, 110 F.3d at 1540-41). Harrison's trial occurred in November 2008, and his conviction became final in February 2011. Harrison must demonstrate that a reasonable investigation would not have unearthed the testimony of Margaret Young until after February 2011. This he fails to do. Harrison faults counsel for not calling Margaret Young as a witness to testify that he, the victim, and her sister were not at Young's home on June 15, 2007.

However, both counsel and Harrison either knew or should have known about Margaret Young's testimony before trial. Specifically, Harrison knew before trial, or at the latest, during trial, that the Commonwealth's evidence was that he and the victim were at Margaret Young's home and that he left Young's home and followed the victim and her sister home. Thus, clearly Margaret Young was a person with knowledge. Whether

Harrison or the victim and her sister were present at Margaret Young's house on the night of June 15, 2007 clearly was an important issue during trial. Multiple witnesses testified about Harrison and the two girls' whereabouts the night of the crimes. The victim and her sister testified that they were at Margaret Young's home that night with Harrison, and that Harrison followed them home. (Nov. 3, 2008 Tr. 109-10; Nov. 3, 2008 Tr. 146-47.) Harrison's daughter also testified that she and Harrison sat on the porch at Margaret Young's home that evening, but that the victim and her sister were not there. (Nov. 3, 2008 Tr. 230-32, 236-37.) Michael Baker testified that he and Harrison were at Margaret Young's house with the victim and her sister as it was getting dark.[8] Margaret Young was the only adult at the home who did not testify during trial. Moreover, not only was the presence of Harrison and the victim at her home in question, but Margaret Young was the grandmother of Harrison's children. (See Nov. 3, 2008 Tr. 197-98; Nov. 4, 2008 Tr. 231.) Any reasonable person exercising due diligence would have discovered her testimony by the time Harrison's

---

[8] Although Harrison did not testify in his defense, in his § 2254 Petition he states that he "was never inside Margaret Young's house . . . he went there at approximately 10:50 and knocked on the door" and talked briefly with his daughter outside. (§ 2254 Pet. 18 (emphasis added).)

conviction became final in February 2011, and certainly years before January 2017.

Moreover, the new testimony from Margaret Young merely corroborates Harrison's position that the victim was not present at Young's home, and that Harrison was not "in" her home.[9] "Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available . . . . As a matter of law new, evidence supporting a claim actually made at or before trial cannot form the basis of a new period under § 2244(d)(1)(D)." Escamilla v. Jungwirth, 426 F.3d 868, 871 (7th Cir. 2005), abrogated on other grounds by McQuiggin v. Perkins, 569 U.S. 383, 397 (2013). Of course, Harrison argues for the converse of that settled principle.

Harrison again contends that he could not have discovered the factual predicate of his claim through the exercise of due diligence until he received Margaret Young's affidavit in January 2017, more than eight years after he heard the evidence that placed both himself and the victims at Margaret Young's house. That argument is unpersuasive. "A habeas applicant who 'merely alleges that [he or she] did not actually know the facts underlying his or her claim does not' thereby demonstrate due

---

[9] Harrison's mother, Dora Harrison, and his wife, Janelle Harrison, also testified about Harrison's whereabouts. Both women testified that Harrison was at his mother's home around the time the sexual assault, rape, and abduction took place. (Nov. 4, 2008 Tr. 241-42, 248.)

diligence." _Magano_, 2011 WL 4073260, at *8 (alteration in original) (quoting _In re Boshears_, 110 F.3d at 1540). Contrary to Harrison's contentions here, the statute of limitations began running when he "became aware of the facts giving rise to his claim, not when he obtained the evidence to support it." _Deloney_, 229 F. App'x at 422. Simply put, Harrison should have known the factual basis for this claim, through the exercise of due diligence, many years before he received the affidavit in 2017.

Harrison unpersuasively argues that he was diligent in attempting to obtain Margaret Young's affidavit. Harrison states that "he impressed upon his family the importance of reaching out to these witnesses and obtaining their affidavits" and that "[t]here was nothing else [Harrison] could have done to compel the witnesses to provide him with affidavits within the limitations period for his claims. Tellingly, Respondent does not point to anything further Petitioner could have done." (Reply 4.) It is incumbent on Harrison, not Respondent, to demonstrate his exercise of due diligence to discover the factual predicates of his claim. Harrison's vague statements about the limitations of his incarceration fail to account for the more than eight-year delay between his trial and obtaining Margaret Young's affidavit in January 2017. Harrison offers no viable evidence about why he could not have learned about

Margaret Young's testimony and counsel's failure to call her as a witness at trial, if he had exercised due diligence, before the time that his conviction became final in February 2011.

Accordingly, Harrison lacks entitlement to a belated commencement of the limitations period under U.S.C. § 2244(d)(1)(D) for Claim C. Claim C is untimely and is barred by the statute of limitations.[10]

### III. CONCLUSION

Accordingly, Respondent's Motion to Dismiss (ECF No. 18) will be granted. The § 2254 Petition will be denied and the action will be dismissed.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition

---

[10] Harrison fails to suggest any other basis for a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)-(C), or for equitable tolling for his three claims. Harrison also does not raise actual innocence as an exception. Harrison states: "Respondent argues that Petitioner has failed to produce any new reliable evidence establishing his actual innocence to excuse his federal procedural default. Petitioner does not dispute this argument as he did not raise a Schlup actual innocence claim." (Reply 4-5.)

should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). No law or evidence suggests that Harrison is entitled to further consideration in this matter. A COA will therefore be denied.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to counsel of record.

/s/   REP
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 23, 2018